IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-0825-RBJ-MJW

LISA DAWN GOLD,

Plaintiff,

v.

STATE FARM FIRE & CASUALTY COMPANY,

Defendant.

---

ORDER

---

This case arises from an insurance dispute between Lisa Gold and State Farm Fire & Casualty Company. When Ms. Gold and State Farm failed to agree on the value of her claim, Ms. Roach filed suit in April 2010. [docket #1]. In her amended complaint, Ms. Gold alleged three claims for relief: breach of contract, unreasonable delay and denial of benefits pursuant to C.R.S. § 10-3-1115 and 1116, and bad faith. [#17]. The parties agreed to dismiss the bad faith claim. [#72]. Ms. Gold has filed a motion for partial summary judgment as to her breach of contract claim [#65] and a motion in limine [#76]. State Farm has filed a motion for summary judgment as to both remaining claims. [#77]. These motions are addressed below.

**Facts**

On December 24, 2007 several pieces of artwork owned by Ms. Gold were damaged during a burglary. Following that loss, there was significant disagreement between Ms. Gold and State Farm about the value of the pieces that were damaged. The controversy that led to the

filing of this lawsuit involves three pieces of artwork: a plaster sculpture of a foot, an abstract painting, and a floral painting.[1]

*The Insurance Policy*

The parties agree that at the time of her loss, Ms. Gold had an insurance policy through State Farm that covered the damaged artwork (the policy). The policy provided that it would "pay the cost to repair or replace property covered under [the policy], except for property listed in item b." Section I-Loss Settlement, Coverage B-Personal Property, ¶ a. [#29-1 at 15]. Paragraph b provides:

> We will pay market value at the time of loss for:
> (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

*Id.* at ¶ b. Paragraph 4 of Section I-Conditions provides:

> **Appraisal.** If you and we fail to agree on the amount of the loss, either one can demand that the amount of the loss be set by appraisal. If either makes written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting the appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

*Events Following Ms. Gold's Loss*

Following her loss, Ms. Gold submitted a claim to State Farm. In her claim, Ms. Gold valued the sculpture at $32,500, the abstract painting at $8,000, and the floral painting at $25,000. Zadok Report at 6. [#80-2]. In June 2008 State Farm hired Paul Zadok of Fine Arts

[1] A photograph was also damaged and estimates of its value also appear on many of the appraisals. That photograph is no longer part of this dispute.

Claim Consultants, Inc. to assist in valuing Ms. Gold's artwork. Mr. Zadok completed a report on October 10, 2008, in which he opined that the market value of the foot sculpture was $250, the abstract oil painting was valued at $1,000, and the floral painting was valued at $4,800. *Id.* [80-2]. Upon receiving this report, State Farm paid Ms. Gold $6,050 on October 15, 2008.[2] Letter from Kimberele E. O'Brien to Keith Frankl (Sept. 19, 2012). [#69-1].

On November 17, 2008 Ms. Gold obtained an appraisal from Jeanette McNertney, Letter of Appraisal from Jeanette Erin McNertney to State Farm Insurance Company (November 17, 2008) [#80-4], and on November 19, 2008, contacted State Farm to contest the amount she was paid based on Mr. Zadok's report. Letter from Lisa Gold to State Farm (November 19, 2008). [27-1]. On December 8, 2008 Ms. Gold again contacted State Farm demanding additional money to settle her claims. Letter from Lisa Gold to State Farm Insurance (Dec. 8, 2008). [#77-1]. In her demand, Ms. Gold included the appraisal values determined by Ms. McNertney: $39,860.00 for the sculpture, $35,000.00 for the floral oil painting, and $10,866.87 for the abstract painting. *Id.* Ms. Gold obtained a second appraisal from Dr. J. Darragh M. Elliot on December 20, 2008 and provided State Farm with the additional appraisal on December 22, 2008. Letter from Dr. J. Darragh M. Elliot to Lisa Gold (December 20, 2008); Letter from Lisa Gold to State Farm Insurance (Dec. 22, 2008). [#77-1, 27-1]. The appraisal from Ms. McNertney and the appraisal from Dr. Elliot both relied on the replacement value of the artwork.

A little over a month later, on January 28, 2009, State Farm sent Ms. Gold a letter titled "Demand for An Appraisal." Letter from Justin Noller, Claims Representative, to Lisa Gold (Jan. 28, 2009). [#27-1]. The letter began: "We regret that we are unable to agree with you as to the amount of loss claimed by you under the above numbered policy and claim number. Pursuant to Section I- conditions in your policy we direct your attention to the appraisal

---

[2] State Farm paid Ms. Gold an additional $2,000 in April 2009. [69-1]

condition." After quoting the appraisal language contained in Paragraph 4 of Section I, the letter continued, "State Farm Insurance Company hereby demands an appraisal and has selected Fine Arts Claims Consultants as a competent, disinterested appraiser. . . . you are required to select a competent, disinterested appraiser and are required to notify us of such selection within twenty (20) days of receipt of this letter." *Id.* The letter also instructs that after the appraisers are selected, their first duty is to mutually agree on a competent and impartial umpire to submit their differences to in the event that the appraisers are not able to agree. *Id.* The letter details:

> If after 15 days the appraisers are unsuccessful in agreeing to an umpire, you or we may ask a judge to select an umpire. Occasionally, more than 15 days are required before an agreement is reached. It is usually only after the appraisers have exhausted all possibilities of an agreement what we will consider seeking the assistance of the court. . . . After selection of the umpire, we ask that the appraisers sign an Appraisal Award document acknowledging the identity of the umpire. The purpose is to avoid any later misunderstanding as to the umpire selected.

*Id.* According to the letter, after an umpire is selected, "the next step is for the appraisers to meet, inspect the damaged property, and attempt to reach an agreement on the amount of the loss." *Id.*

Ms. Gold selected Dr. Elliot as her appraiser. According to a log kept by State Farm, on February 10, 2009, State Farm had received all material submitted by Ms. Gold, her appraiser, and Mr. Zadock. State Farm Activity Log. [#33-1]. The parties did not submit any evidence that Dr. Elliot and Mr. Zadok ever met to attempt to reach a consensus about the value of the art work. On April 13, 2009 Ms. Gold emailed Dr. Elliot to inform him that the next step was to find a third party appraiser. Email from Lisa Gold to Dr. J. Darragh M. Elliot (April 13, 2009). [77-1 at 33]. Ms. Gold also told Dr. Elliot that she had found an appraiser that would "confirm the appraisal." *Id.* Two weeks later, on April 30, 2009, Ms. Gold emailed Mr. Zadok and explained that she was owed replacement value and that she would proceed with a third party

appraiser as discussed the day before. Email from Lisa Gold to Paul Zadok (April 30, 2009). [77-1]. In that email, Ms. Gold stated, "[a]s discussed, a Mr. Daniel Dan Buck Soules was selected for his experience and credentials and will be reviewing the replacement values per the policy as a very experienced appraiser of 30 years and umpire in this situation." *Id.*

A little over a week later on May 8, 2009, Mr. Zadok spoke with a State Farm agent and was told to select an umpire. Zadok Aff. at ¶ 9. [#27-1]. That same day Mr. Zadok emailed Dr. Elliot a list of three potential umpires. Email from Paul Zadok to Dr. J. Darragh [sic]. [#77-2]. Dr. Elliot replied to the email by instructing Ms. Gold that before accepting any of the umpires she should find out more about them and request a CV. Email from Dr. J. Darragh M. Elliot to FACC (May 8, 2009). Also that same day, Mr. Soules submitted a report to State Farm saying that he concurred with Dr. Elliot about the replacement values of the artwork. Letter from Daniel Buck Soules to Cori Nosai, State Farm Insurance (May 8, 2009). [#77-1]. On May 20, 2009 Mr. Zadok received an email from Dr. Elliot stating that the appraisal process was already completed and that a second umpire was not needed. Email from Dr. J. Darragh M. Elliot to Paul Zadok (May 20, 2009). [#77-2]. On June 15, 2009 State Farm communicated to Ms. Gold that the umpire selection process had not been completed because Mr. Zadok was not part of the selection of Mr. Soules. Knapp Dep. 159:12-18. [#80-1].

No records were submitted about what happened in the valuation process for the next seven months. Then, in January 2010, State Farm sent a letter to Ms. Gold documenting a conversation they had recommending appraisal. Letter from State Farm to Lisa Gold (Jan. 25, 2010). [27-1]. Again, there is nothing in the record until Ms. Gold filed this lawsuit on April 13, 2010.

On September 10, 2010 the parties stipulated to use the appraisal process described in the policy to determine the value of Ms. Gold's artwork. Stipulated Mot. for Order to Submit Underlying Ins. Claim to Appraisal Process ¶ 4. [#20]. As part of the stipulation, they agreed to judicial determination whether each of the appraisers was fair and impartial. *Id.* at ¶ 5. On September 20, 2010 Magistrate Judge Watanabe ruled that neither parties' appraiser was fair or impartial, and that both should be disqualified. Order, September 30, 2010. [#34]. Judge Watanabe held that Dr. Elliot was not fair and impartial, because his fee agreement with Ms. Gold was based upon her obtaining an award from State Farm. *Id* at ¶ 7. Additionally, Judge Watanabe held that Dr. Elliot's appraisal relied on the replacement value of the artwork but the appropriate measure based upon the terms of the policy was market value. *Id.* at ¶ 8. Judge Watanabe disqualified Mr. Zadok based upon an Operation Guide for Appraisal dated 06-26-02, which provided that a "party who has acted in the course of the adjustment process to inspect, evaluate, or negotiate the claim, or has previously expressed an opinion concerning the loss or has preconceived views is subject to challenge and disqualification." *Id.* Because Mr. Zadok completed his appraisal in October 2008 before the parties agreed to the appraisal process, he was not an impartial appraiser. *Id.*

On October 15, 2010 both parties filed notices that they had designated new appraisers. [#35, 36]. Ms. Gold then sought to submit to the new appraisers the previous reports from Dr. Elliot and Mr. Soules. State Farm objected, believing that this would bias the process and was inconsistent with Judge Watanabe's order. On December 20, 2010 State Farm filed a motion to compel Ms. Gold to follow Judge Watanabe's previous order and not submit the previous appraisals. [#38]. Judge Watanabe entered a recommendation granting the motion on January 4, 2011, [#41], and plaintiff objected [#42]. This Court affirmed Judge Watanabe's order on

December 21, 2011. [#60]. On September 10, 2012 the appraisers agreed that the damaged artwork was valued at $54,600. Supplemental Joint Status Report. [$63]. State Farm paid Ms. Gold $46,550, the difference between the appraisal and what State Farm had already paid on September 19, 2012. [#69-1].

**Standard of Review**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56 (c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**Conclusions**

*Breach of Contract*

Ms. Gold argues that State Farm breached its contract by designating Mr. Zadok as its appraiser, because Mr. Zadok was not a competent appraiser as later confirmed by Magistrate Judge Watanabe's order disqualifying him. Pl.'s Br. 6-7. [#65]. Under Colorado law, to

establish breach of contract, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Ms. Gold cannot show that she performed the contract and has not shown a justification for non-performance. Although State Farm's appraiser, Mr. Zadok was disqualified, Ms. Gold's appraiser, Dr. Elliot, was also disqualified. Judge Watanabe determined that Dr. Elliot had a financial interest in the outcome and used replacement value instead of market value to determine the value of the artwork. Mr. Zadok was disqualified because he performed his audit for State Farm before the audit process was started. The same can be said for Dr. Elliot. Dr. Elliot completed an audit for Ms. Gold in December 2008 but State Farm did not send the letter demanding an audit until January 2009. It would not make sense to hold State Farm liable for breach of contract when Ms. Gold made the same errors in the appraisal process as State Farm.

*Unreasonable Delay*

Colorado Revised Statute § 10-3-1115(1)(a) provides that an insurance company "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." An insurer's delay is unreasonable if "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." C.R.S. § 10-3-1115(2). The Colorado courts have held that it is reasonable for an insurance company to challenge a claim that is "fairly debatable." *Vaccaro v. Am. Family Mut. Ins. Co.*, 275 P.3d 750 (Colo. App. 2012).

Ms. Gold argues that State Farm unreasonably withheld payment between October 2008 when Mr. Zadok issued his first report and September 2010 when the parties stipulated that they

would use the appraisal process. Pl.'s Resp. Br. [#80]. State Farm contends that any delay was the result of Ms. Gold's conduct because she "(1) embarked upon an effort to have the appraisal conducted using replacement value rather than market value as the measure; and (2) acted in conjunction with her selected appraiser to find an umpire who would simply support her selected appraiser's replacement value measure.". Df.'s Br. 5. [#77] Ms. Gold responds that delays were caused by State Farm's failure to communicate clearly and effectively. Pl.'s Resp. Br. 9. [#80].

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assur*., 261 P.3d 490, 497 (Colo. App. 2011). This is not a case where reasonableness can be decided as a matter of law.

It is clear that in the beginning there was a genuine dispute as to the value of the artwork. On behalf of State Farm, Mr. Zadok valued the artwork at $6,050. In her first demand Ms. Gold valued the artwork at $65,500. Ms. Gold's first appraiser Ms. McNertney valued the artwork at $85,726.87. Neither party has divulged the amount at which Dr. Elliot valued the artwork. Ultimately, the second set of appraisers appointed by the parties, Ms. Pettee and Dr. English, agreed that the work was valued at $54,600. Based on these varying valuations, it was reasonable for State Farm to challenge Ms. Gold's claim that State Farm had underpaid based on the Zadok report.

However, the Court cannot determine as a matter of law whether the nearly two year delay between Mr. Zadok's report and the parties' stipulation to use the appraisal process was reasonable. There is a fact dispute as to the cause of the delay, whether it was Ms. Gold trying to subvert the appraisal process or State Farm failing to communicate with Ms. Gold during the

process. The parties provided detailed records about the communication between them in January through May 2009. However, no explanation is provided about what transpired from June 2009 until January 2010. There is also no explanation why in January the process seems to start over again with State Farm recommending appraisal. And even when appraisal was recommended again, it still took eight additional months before the parties agreed to the appraisal process. There are simply too many unexplained lapses of time for this Court to determine as a matter of law whether State Farm unreasonably delayed authorizing additional payment for the damaged artwork.

*Motion in Limine*

Ms. Gold has filed a motion in limine asking this Court to determine that the appraisers, Ms. Pettee and Dr. English, will be permitted to testify during trial that it was relatively easy to do a valuation of the artwork. [#76]. "A *motion in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir.1983)). "The purpose of a *motion in limine* is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Gustafson v. Am. Family Mut. Ins. Co.*, No. 11-CV-01303-PAB-MEH, 2012 WL 5949572, *1 (Bankr. D. Colo. Nov. 27, 2012) (quoting *United States v. Cline*, 188 F.Supp.2d 1287, 1291 (D.Kan.2002)).

Ms. Gold is not asking this Court to exclude evidence, but rather to affirmatively decide that it can be admitted. At a minimum, evidence must be relevant to be admissible. Fed. R. Evid. 402. Further, the "court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Consequently, "in many cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context." *Gustafson,* 2012WL5949572 at *1. This is one of those situations. At this point, the Court cannot reasonably determine whether the appraisers testimony will be relevant, and even if it is relevant whether it should be excluded for another reason. Accordingly, Ms. Gold's motion in limine is denied.

*Trial Date*

On November 5, 2012 during a scheduling conference the Court directed counsel to set a trial date if they could not resolve the case. [#66]. The parties notified the Court that they would not be settling the case, but they have still not contacted the Court to set a trial date. This is an old case. If the parties are serious about wanting to go to trial, then they are ordered jointly to contact Chambers within 14 days after the date of this order and set the case for trial. Failure to do so will be interpreted as failure to prosecute, resulting in dismissal of the remaining claims without prejudice.

**Order**

1. Plaintiff's motion for partial summary judgment [#65] is DENIED
2. Defendant's motion for summary judgment [#77] is GRANTED IN PART AND DENIED IN PART.
3. Plaintiff's motion in limine [#76] is DENIED.
4. Parties are instructed to contact chambers within 14 days to set a trial date.

DATED this 8th day of May, 2013.

BY THE COURT:

R. Brooke Jackson
United States District Judge