IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-00825-RBJ-MJW

LISA DAWN GOLD,

    Plaintiff,

v.

STATE FARM FIRE & CASUALTY COMPANY,

    Defendant.

---

## ORDER

---

The case is before the Court on defendant's motion to enforce settlement agreement (ECF No. 113). For the reasons set forth herein, the motion is granted in part and denied in part.

**Facts**

This case was filed on July 21, 2010 but the facts date back to Christmas Eve in 2007. Three of Ms. Gold's artworks were damaged on or about that day during a burglary. She submitted an insurance claim on her State Farm homeowner's policy, and there has never been any serious dispute as to whether there was coverage under the policy. The dispute concerns the amount of coverage and whether State Farm acted unreasonably in its handling of the claim.

Ms. Gold valued the three pieces of art collectively at about $75,000. State Farm hired a claim consultant to assist in valuing the artworks, and after receiving his report, which valued the art at just over $6,000, State Farm tendered $8,050 to Ms. Gold. That was not acceptable to the plaintiff, and the parties agreed to implement an appraisal process contemplated in the policy to try to resolve the dispute whereunder both parties would select an appraiser who in turn would

1

jointly select a third appraiser or umpire if the parties' appraisers could not agree. That process ran into a hiccup when each party challenged the independence of the other party's selected appraiser. Magistrate Judge Watanabe disqualified them both and ordered them to start over. ECF No. 34. That led to more motions and filings which I need not itemize other than by observing that the case dragged on and on.

Eventually, however, the appraisal process did work. The appraisers determined that the market value of the artwork was $54,600. State Farm promptly tendered an additional $46,550 to Ms. Gold to complete the payment of the appraised amount. But that did not end the controversy. Ms. Gold had also alleged that, because of State Farm's unreasonable delay in paying the claim, she was entitled to a two times the covered benefit plus attorney's fees and costs under C.R.S. 10-3-1116. That part of the case was not yet resolved, as the Court found in denying the defendant's motion for summary disposition of that issue. ECF No. 77.

Up to that point Ms. Gold had been represented by attorney Keith Frankl. But then Mr. Frankl and Ms. Gold had a falling out, and he was permitted to withdraw. Magistrate Judge Watanabe conducted an unsuccessful settlement conference in which Ms. Gold represented herself. Ms. Gold then moved to continue the trial, which had been set for November 12, 2013, so that she could seek new counsel. After learning that the law firm of Killian Davis Richter & Moyle had expressed its willingness to represent Ms. Gold if the trial were continued, and despite State Farm's objection, the Court did vacate the trial date. The Court reset the trial to begin on February 24, 2014, with a trial preparation conference on January 24, 2014. It did advise the parties that it would not continue the trial of this very old case again.

Two days before the trial preparation conference Ms. Gold's new lawyers filed a motion to vacate the conference and to "stay" other trial deadlines. ECF No. 111. This was based on the

parties having reached a "tentative settlement" of the case. The Court vacated the trial preparation conference, reiterated that it would not postpone the trial, and requested a status report by February 7, 2014. ECF No. 112.

On February 6, 2014 State Farm filed the pending motion to enforce settlement. In the motion State Farm represented that the matter had been settled following mediation by former Denver District Judge Joseph Meyer of the Judicial Arbiter Group. It attached a confirming email from Judge Meyer, ECF No. 113-1, and a "Settlement Agreement" prepared by Judge Meyer and submitted to counsel for the parties' signatures. ECF No. 113-2. Among other things the settlement contemplated an additional cash payment to Ms. Gold of $60,000 in exchange for dismissal of this case with prejudice and a full and final release by her of all claims against State Farm related to this matter.

The Court conducted a telephone conference with counsel on February 7, 2014, and Ms. Gold was added to the conference shortly after it began. Essentially State Farm reiterated that the parties had reached a settlement, and indicated that State Farm had already provided the signed settlement agreement and State Farm's check for $60,000 made out jointly to Ms. Gold and her attorneys to plaintiff's counsel. Counsel reported that the settlement was not reached during the mediation session but was accomplished after post-session communications among the lawyers and the mediator.

Ms. Gold initially took the position that there was no settlement, because she had conveyed to her attorney that her bottom line was $75,000, but that her attorney had "settled" the case without her knowledge or permission for an amount below that figure. Counsel indicated that Ms. Gold was not speaking with them anymore, but that they had compromised their fee to get the deal done. As the telephone conference continued, however, it became apparent that Ms.

Gold's dispute is no longer with State Farm. She said she is willing to accept a $60,000 settlement and, save for some relatively minor editing that she wishes to suggest, she would sign the proposed settlement agreement. Her real dispute now is with her own attorneys, specifically, the attorney's fees and costs that her attorneys are demanding. She claims that she has no fee agreement with her attorneys, and she suggested that the money be turned over to the Court for distribution as the Court determines is appropriate.

**Conclusions**

"'A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.'" *Shoels v. Klebold,* 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir. 1993)). Although an attorney serves as the client's agent, he does not have the authority to compromise and settle a claim without the client's permission. *Id.* Thus, I ordinarily would not force Ms. Gold to accept a settlement to which she did not consent.

What makes this situation different, however, is that Ms. Gold indicated during our telephone conference that she is willing to accept the settlement. Her complaint no longer concerns State Farm. It concerns her lawyers and the amount of the fees and cost reimbursements that they are claiming. It is not reasonable to force State Farm to go to the expense of trial preparation and trial (and to lose the value of the time and expense it devoted to the settlement process) in that circumstance. It likewise is not reasonable to take the time of jurors when the issues that would be presented to them are not the issues actually in dispute. Therefore, State Farm's motion to enforce the settlement is granted. The February 24, 2014 trial is vacated.

The Court does not wish to intervene in the division of the settlement proceeds between Ms. Gold and her attorneys if that can be avoided. The Court directs Ms. Gold and her attorneys to confer (meaning talk to each other) and to exercise their best efforts, in good faith, to resolve their attorney's fees and costs disputes. The Court also directs plaintiff's counsel to consider the edits that Ms. Gold wishes to make in the form of the agreement and to attempt to resolve those matters either with Ms. Gold or State Farm's counsel as appropriate. If those issues are resolved, then Ms. Gold should sign the settlement agreement (as revised if necessary) and the State Farm check. Plaintiff's counsel then may sign the settlement agreement and check; deduct the amount of its agreed attorney's fees and costs; remit the balance to Ms. Gold; return a fully signed settlement agreement to State Farm; and notify the Court that this case may be dismissed with prejudice.

However, if all of that has not been accomplished within 10 calendar days after the date of this order, meaning by February 21, 2014, then counsel should so notify the Court. Plaintiff's counsel should simultaneously provide the Court with a copy of their fee agreement with Ms. Gold, if any, and an itemized accounting of their time recorded to this file, billing rates, and costs advanced. The Court will then determine the amount that plaintiff's counsel may deduct before remitting the balance to Ms. Gold. In that scenario the Court will also resolve the terms of the settlement and direct the Clerk of Court to sign the agreement in place of Ms. Gold. *See* Fed. R. Civ. P. 70(a). In that regard, I have read Judge Meyer's draft settlement agreement. It appears to be reasonable, and I would probably adopt it as is absent good cause to make a change.

**Order**

ECF No. 113 is GRANTED. The parties shall proceed as directed in this order.

DATED this 11th day of February, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge